IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAMES BROADNAX, *Plaintiff*, | § § § |
| v. | § CIVIL ACTION NO. 4:24-cv-03132 § |
| MELISSA ELLIOTT, ET AL. *Defendants*. | § § § |

### DEFENDANTS COLLIER, LUMPKIN, AND LINTHICUM'S REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Bryan Collier ("Collier"), Bobby Lumpkin ("Lumpkin"), and Lannette Linthicum ("Linthicum") (collectively, "Defendants") file their Reply in support of their Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants offer the Court the following:

### I.     REPLY

**A. The Contract between TDCJ and UTMB and alleged *de facto* policy do not rise to the high standard of showing Defendants were deliberate indifferent to Plaintiff's medical needs.**

Plaintiff attempts to input deliberate indifference liability on Defendants collectively, in two ways. The first being a deficient "Contract" between The Texas Department of Criminal Justice ("TDCJ") and the University of Texas Medical Branch ("UTMB"). Dkt. No. 73 at 7. The second is their collective promulgation of "a *de facto* policy of delaying and/or denying medical care to prisoners." *Id.*

#### *The "Contract"*

This deficient Contract that Plaintiff hangs his hat on, is a contract signed by Defendant Collier and the Executive Vice President of the University of Texas Branch at Galveston. *See* Dkt. No. 35-14 at 35. The Contract does not mention Lumpkin or Linthicum,

yet Plaintiff holds all three Defendants accountable for each and every policy within the Contract that, according to him, results in a constitutional violation because of denied medical care. Dkt. No. 73 at 11. Liability only exists, "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (internal quotations and citations omitted). Responsibility for the implementation of this Contract's abundant policies cannot be said of Lumpkin and Linthicum. Plaintiff offers no facts to support this. Rather, Plaintiff is asking the Court to draw the conclusion that holding a director title (which Plaintiff bases on speculation) and/or having knowledge of data regarding legal deliberate indifference claims asserted by inmates, automatically makes Lumpkin and Linthicum liable for the implementation of policy from a single contract. *See* Dkt. No. 73 at 11. This simply does not amount to the high standard for an alleged constitutional violation under the Eighth Amendment for supervisory liability of a Contract signed by Collier.

As for Collier's role in the Contract, Plaintiff relies on *McCollum v. Livingston* as the authority on point to support a deliberate indifference challenge to a "facially unconstitutional" Contract. Dkt. No. 73 at 23. However, the *McCollum* case involved a heat related death with facts discernable from this matter. No. 4:14-CV-3253, 2017 WL 608665, at *12 (S.D. Tex. Feb. 3, 2017). In *McCollum*, the director defendant was on notice that TDCJ Units did not have air conditioning, he was aware of extreme heat temperatures, and was on notice of two heat related deaths, prior to plaintiffs, via a memo he received. *Id*. As to policy, director defendant was aware of the need for a policy to allow medical care when medical staff was off site and that such a policy was not in existence but would've aid plaintiff had it been. *Id*. at 29. Unlike in *McCollum*, a policy exists here, and the policy does not allow a blanket disregard for refusing to treat inmate by ignoring 20% of sick calls. *See* Dkt. No. 35-14 at 30.

For example, Indicator #7 of the Contract states "[e]ach Inmate who submits a Sick Call Request for medical services, (whether nursing sick call or provider sick call) will be physically triaged within seventy-two (72) hours." Dkt. No. 35-14 at 30. Plaintiff interprets this as 20% of calls are ignored, as alleged in his situation, when in fact the policy could be read as allowing for 20% of calls to be triaged after a 72-hour period. It never states that calls should be disregarded. *Id.* Regardless, Plaintiff appropriately recognizes that "the meaning of the contractual terms are not a proper basis for a motion to dismiss," however, this is the only basis he alleges for holding Collier responsible for a facially "unconstitutional" contract to supports his deliberate indifference claim. Dkt. No. 73 at 24. Plaintiff has not reconciled how these contractual allegations are anything more than conclusory[1] and thus, fails to establish how Collier's role in the signing of the Contract is deliberately indifferent towards inmate medical needs.

### De Facto Policy

As to Plaintiff's second contention, he claims that Defendants, in their supervisory roles, allowed a *de facto* policy to exist for denying medical care. Dkt. No. 73 at 18. "Deliberate indifference in a failure to supervise context generally requires proof of 'at least a pattern of similar violations *arising from* training [or supervision] that is so clearly inadequate as to be obviously likely to result in a constitutional violation.'" *Rutland v. McMillan*, No. 3:08-CV-763 DPJ-FKB, 2010 WL 3937871, at *6 (S.D. Miss. Sept. 30, 2010) (quoting *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir.2005)). To demonstrate this pattern, Plaintiff cites to six incidents that he alleges are "similar violations" of denied medical care. Dkt. No. 35 at 26-28.

---

[1] "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

The first being an inmate who spent six-months without a hip joint because UTMB employees canceled or moved his appointments. *Id.* at 26. The second incident was a misdiagnosis by a doctor that resulted in an inmate losing his eyesight in one eye. *Id.* The third incident involved a delay in treatment because a UTMB nurse misevaluated the seriousness of a medical episode that resulted in lost life. *Id.* The fourth incident indicates an inmate was being treated for an infection by UTMB staff who didn't follow the appropriate doctor's orders which significantly worsened the inmate's condition. *Id.* at 27. Like the second incident, the fifth incident was a misdiagnosis by a UTMB doctor that resulted in a developed disease. *Id.* The final incident involves a heat, respite dispute with UTMB employees. *Id.* at 27-28. Of note, all of these alleged "patterns" of delayed medical care involved UTMB employees or medical professions, not TDCJ employees. Clearly, Plaintiff recognizes that Collier is the Executive Director of TDCJ and Linthicum is the Director of Health Services at TDCJ (Dkt. No 35 at 4) yet he charges them with supervisory responsibility over UTMB subordinates since their roles require "monitoring" the performance of UTMB as an agency. Dkt. No. 73 at 24. This is a dangerous precedent to set for any executive of an agency that contracts with another agency, which is likely why Plaintiff cannot point to authority to support this conclusion.

To support an inference that Defendants are responsible for the actions of UTMB doctors and/or employees under a theory of supervisory liability, Plaintiff needs to establish that Collier, Linthicum, and Lumpkin are their supervisors, which he has not done. *See generally*, Dkt. No. 35. "'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.'" *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.,* 537 F.3d 404, 435 (5th Cir. 2008)). Additionally, other than perhaps the

third incident, all these incidences offered by Plaintiff to show a "pattern" either involve a misdiagnosis[2] or failure to follow doctor's orders. Dkt. No. 35 at 26-28. They are entirely different allegations that do not support a pattern of delayed treatment by TDCJ staff that resulted in a serious harm. Thus, the claims against Defendants for deliberate indifference must be dismissed.

### B. Plaintiff fails to satisfy the first prong of qualified immunity thus entitling Defendants to the defense.

As previously quoted in Defendants' *Motion to Dismiss* "[a] court's decision on qualified immunity involves two questions: (1) whether the defendant violated the plaintiff's constitutional or statutory rights; and (2) whether those rights were clearly established at the time of the violation 'such that the officer was on notice of the unlawfulness of his or her conduct.'" *Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). In his response, Plaintiff draws attention to the second prong analysis. Dkt. No. 73 at 30. Defendants don't dispute that it is well established that the Eighth Amendment required prison officials to afford inmates' adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Yet, we need not reach this second prong on the analysis of clearly established law because of all the reasons asserted above and argued in Defendants' *Motion to Dismiss*, Plaintiff has not satisfied the first prong of showing Defendants violated a constitutional right. "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County,* 246

---

[2] "[A] misdiagnosis does not show deliberate indifference." *Zaunbrecher v. Gaudin*, 641 F. App'x 340, 346 (5th Cir. 2016).

F.3d 481, 489 (5th Cir.2001)). By failing to satisfy his burden, Defendants are entitled to the defense of qualified immunity.

## II.   CONCLUSION

Defendants respectfully renew their request that the Court grant their motion and dismiss Plaintiff's claims with prejudice.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

*/s/ Alyssa Cervantes*
**ALYSSA CERVANTES**
Assistant Attorney General
Texas State Bar No. 24138546
Alyssa.Cervantes@oag.texas.gov

Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

**ATTORNEYS FOR DEFENDANTS**

## NOTICE OF ELECTRONIC FILING

I, **ALYSSA CERVANTES**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing a true copy of the above in accordance with the Electronic Case Files System of the Southern District of Texas on January 28, 2025.

*/s/ Alyssa Cervantes*
**ALYSSA CERVANTES**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **ALYSSA CERVANTES**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and forgoing, will be served on all attorneys of record via CM/ECF electronic notice on January 28, 2025.

*/s/ Alyssa Cervantes*
**ALYSSA CERVANTES**